### UNITED STATES v. WILLIAMS et al.
#### Civ. A. No. 822.

United States District Court
W. D. Arkansas, Fort Smith Division.
Sept. 4, 1952.

Gutensohn & Ragon, Fort Smith, Ark., for plaintiff.

Hugh M. Bland, Sp. Asst. to U. S. Atty. and R. S. Wilson, U. S. Atty., Fort Smith, Ark., for United States.

JOHN E. MILLER, District Judge.

### Statement

There is before the Court a petition filed by Mrs. Myrtle Oliver (Mrs. O. M. Oliver) and Jean Oliver, the minor daughter of Mrs. Myrtle Oliver and O. M. Oliver, seeking to set aside a decree quieting and confirming the title of the United States of America in 134.5 acres of land in Crawford County, Arkansas, designated as Tract No. 69. The petition or motion was filed by an attorney other than the attorney who appeared at the trial for the petitioner and at the hearing many of the allegations in the petition were abandoned. Upon examination of the petition, and in view of the provisions of Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., it appeared to the Court that the facts should be determined before action was taken on the petition, and in an effort to ascertain the facts in the controversy between petitioner, Mrs. Myrtle Oliver, and the United States, the Court directed that a full hearing or trial on the merits be had and this has been done. After considering the ore tenus testimony of the witnesses, the exhibits to their testimony and stipulations of the parties, the Court now makes and files its findings of fact and conclusions of law, separately stated.

### Findings of Fact

1.

On April 18, 1918, O. M. Oliver acquired title to the land involved herein for a consideration of $1,200. The deed to Oliver correctly described the land and was recorded on April 5, 1919, and is now of record in deed record book 95 at page 236 of the records of Crawford County, Arkansas.

O. M. Oliver and wife, Mrs. Myrtle Oliver, the petitioner, immediately went into actual possession of the land following the purchase thereof, and the said O. M. Oliver continued to live on the land with his family until the year 1939 when he abandoned his wife, children and farm, leaving his wife, the petitioner, and the children in possession of the farm.

2.

For the year 1929 the land appeared on the assessment and tax records as follows:

O. M. Oliver, SW NE, Sec. 20, T 11 N, R 31 W, 40 acres, value of $100, tax .................... $3.39

O. M. Oliver, S½ NW, Sec. 20, T 11 N, R 31 W, 80 acres, value of $250, tax .................... $8.47

O. M. Oliver, Pt N½ SW, Sec. 20, T 11 N, R 31 W, 14.5 acres, value of $50, tax .................. $1.69

The taxes were not paid, and on June 9, 1930, the land was sold to the State of Arkansas for the nonpayment of the taxes. Not having been redeemed within two years following the sale or forfeiture, the land was certified to the State of Arkansas on July 5, 1932, by the County Clerk of Crawford County, Arkansas.

Prior to the date of the sale of the land for the nonpayment of taxes a penalty of 34 cents and costs of 85 cents were added to the tax on the 40 acre tract so that the total amount for which the 40 acre tract was sold was $4.58. On the 80 acre tract a penalty of 85 cents and costs of 85 cents were added so that the total amount for which the tract was sold was $10.17. On the 14.5 acre tract a penalty of 17 cents and costs of 85 cents were added, making the total amount of $2.71 for which the tract was sold.

3.

At the trial it was agreed by the attorney for the government and the attorney for the petitioner that Honorable Claude A. Rankin, Commissioner of State Lands, had certified that the maximum costs per tract on land sold for nonpayment of taxes during the years 1929, 1930 and 1931 were 80 cents per tract, and that the maximum penalty was 10% of the taxes.

Thus the costs charged against each tract and for which each tract was sold exceeded by 5 cents the maximum costs.

4.

On October 9, 1935, the Commissioner of State Lands executed his deed to the

United States of America under the authority of Sections 10–1112 and 10–1113, Arkansas Statutes 1947, Annotated. This deed was recorded on November 30, 1935, and is now of record in deed record book 142 at page 43 of the deed records of Crawford County, Arkansas. In the deed the lands were described as follows:

| "Parts Of Section | Section | Twp | Range | Acres |
|---|---|---|---|---|
| SW¼ NE¼, S½ NW¼ | 20 | 11N | 31W | 120 |
| Pt. N½ SW¼ | | | | 14.5" |

As will be observed from a reading of the statute under which the deed was executed, the United States paid no money to the State of Arkansas for the land.

**5.**

The United States never took actual possession of the land and the petitioner, Mrs. Oliver, and her children continued to live on the land until March 12, 1948, when the home was destroyed by fire and the family was compelled to leave the land since they were unable to rebuild the dwelling. However, Mrs. Oliver and her children continued to use the land as well as the barn and other buildings on said land. Approximately 40 acres of the land is under fence. Some of the cleared land is bottom land and suitable for row crops. The other land under fence is used for the production of hay, and the petitioner, Mrs. Oliver, and her children, notwithstanding the destruction of the dwelling, have continued to use the land, keep the fences and other improvements thereon in repair, and to exercise every right of ownership in the entire 134.5 acres.

The only attention that has been given to the land by the United States is the same as is given to other land in the area for the purpose of protecting the forest from fire.

**6.**

On February 25, 1949, the United States filed its petition under Sections 34–1901 to 34–1910, both inclusive, Arkansas Statutes 1947, Annotated, praying that its title to certain tracts of land therein described be quieted and confirmed.

The sale of the land to the state for the nonpayment of taxes was not confirmed under Act 119 of the Acts of 1935 of the General Assembly of Arkansas, as amended.

The land involved here was described as follows:

"*Tract No. 69:*

"SW¼ NE¼; S½ NW¼; and 14.5 acres out of the N½ SW¼ and all of said quarter sections except other tracts owned by the United States of America, containing 134.5 acres, more or less, in Crawford County, Arkansas, all of section 20, Township 11 North, Range 31 West."

Summons was issued on the petition and served on Mrs. Myrtle Oliver on May 4, 1949. At the time the summons was served on Mrs. Oliver, she employed Mr. Harold C. Rains of Van Buren, Arkansas, to represent her. Her attorney advised her that he would answer the petition of the United States and would otherwise represent her interests. At all times since then Mrs. Oliver has attempted to defend the action brought by the government, but necessarily had to rely upon her then attorney to represent her interests. She finally learned that a decree confirming the title in the government had been entered and she talked to Honorable R. S. Wilson, United States Attorney, about her rights. The United States Attorney did not in anywise mislead Mrs. Oliver, and she returned to the office of her attorney in Van Buren and was told by him that he desired that she remain away from the Federal Court and that he would look after her interests. He did not do so, and as a result the decree of the court stood unchallenged until the present petition to set the decree aside was filed on June 19, 1952, by Harold C. Rains, Jr., the son of Harold C. Rains. After the petition to set aside the decree was filed, Mrs. Oliver employed her present attorney who has and is now representing her.

The default decree was rendered on August 29, 1949, and the land involved herein was described as it was in the petition and as hereinbefore set forth.

On January 9, 1950, upon an ex parte petition, the decree was modified so as to correct the description of Tract No. 69 to read as follows:

"SW¼ NE¼; S½ NW¼; and 14.5 acres out of N½ SW¼ being a strip of land 14.5 rods wide along the entire north side of said SW¼; containing 134.5 acres, more or less, in Section 20, Township 11 North, Range 31 West, Crawford County, Arkansas."

Prior and subsequent to the entry of the decree the representatives of the government apparently recognized that the title of the government to the land in question was defective and continued to discuss the matter with Mrs. Oliver and her then attorney, Mr. Harold C. Rains.

On May 29, 1937, O. M. Oliver and his wife, Myrtle Oliver, executed an option for the purchase of the land by the United States by the terms of which the United States agreed to pay O. M. Oliver and Mrs. Myrtle Oliver $8.67 per acre. This option was not exercised by the United States within six months from the date thereof.

On March 24, 1948, after O. M. Oliver had abandoned his wife and left her and the children in possession of the land, Mrs. Oliver executed another option to the United States whereby she agreed to sell the land to the United States for the sum of $5 per acre, which option provided that all buildings and fences were reserved " * * * in Myrtle Oliver for six months after title is vested in the United States."

On April 5, 1948, Mrs. Oliver wrote Mr. Paul H. Gerrard, Forest Supervisor of the United States, advising that she would not accept the sum of $5 per acre as set forth in the option, and on April 8, 1948, Mr. Gerrard replied to that letter as follows:

"This will acknowledge receipt of your letter of April 5.

"When Mr. Long offered you $5.00 per acre for your land, that offer represented the amount which our field examination determined was the value of the land to the Government. We do not feel that it is worth any more and we had no intention of trying to buy your place in any kind of a forced sale or at a bargain price.

"Since you apparently feel that we misrepresented the facts when you signed the option, we will not forward it for approval. If, however, at some later date you decide to sell your land, we will be glad to discuss the matter with you further."

On June 12, 1948, O. M. Oliver conveyed by quitclaim deed the land to his wife, Mrs. Mrytle Oliver. This deed was executed before a Notary Public in Sedgwick County, Kansas, but has not been recorded, and for some reason was sent by the attorney who was then representing Mrs. Oliver to Mr. Paul H. Gerrard, Forest Supervisor, who wrote Mrs. Oliver as follows:

"United States Department of Agriculture
Forest Service
Ozark National Forest
(Seal)
Russellville, Arkansas
September 2, 1948

"Address Reply To
Forest Supervisor
And Refer To

"L
Acquisition—Ozark
Purchase
Oliver, O. M.
No. 773a

"Mrs. Mrytle Oliver
Route No. 1
Rudy, Arkansas

"Dear Madam:

"Mr. H. C. Rains sent me a quitclaim deed to you on 134½ acres of land in Section 20, T11N, R31W. I promised to give you a chance in the event Mr. Oliver quitclaimed his interest to you to sell this tract to the United States, reserving to you the right to live upon and farm it for life.

"You have already signed an option for the sale of this tract to the United States which does not expire until March 24, 1949. As I wrote you, I shall not send it in for approval until you request me to do so.

"Due to failure of you or Mr. Oliver to pay

taxes when past due, your lands were included in a deed the State of Arkansas made to the United States. It is my understanding now that your tract is included in a condemnation suit to quiet the title of the United States or decide who lawfully owns your lands. I am sure you will be notified when this suit will be tried.

"I am holding the quitclaim deed in the files until I hear from Mr. Chisholm, and if he doesn't need it, I shall return it to Mr. Rains.

"When I offered you $5.00 per acre for your tract, I made the best offer I could. I regret I cannot increase my offer. I believe you will be wise to sell with the right to live on it for life but the wisdom of your choice will depend on the decision of the Court that is yet to be made.

"Very truly yours,<br>
(signed)<br>
Paul H. Gerrard<br>
Forest Supervisor"

**8.**

The testimony does not disclose the present market value of the land nor its market value at the time the United States obtained a deed therefor from the Commissioner of State Lands, but the land is the home place of the petitioner, Mrs. Oliver, and her children, and since she acquired a quitclaim deed from her husband, O. M. Oliver, she is the owner of the land, subject only to the right, if any, that the United States has acquired in the land by virtue of the sale for delinquent taxes for the year 1929.

**9.**

The representatives of the United States in their capacity as Forest Rangers, and the Forest Supervisor, have made no attempt to overreach or to defraud Mrs. Oliver. In fact, their conduct in this case was commendable, but her then attorney did nothing effective to protect her interest. She is uneducated, the mother of several children, and they have been compelled to eke out an existence on this farm since the husband and father abandoned them in 1939. Mrs. Oliver did not know her legal rights, and for some reason which does not clearly appear from the evidence, her then attorney did not file an answer to the petition of the

government when it was seeking to confirm its title to the land, although Mrs. Oliver was depending upon him to protect her and her children's interests in the land.

Mr. Troy Curtis, District Forest Ranger, testified that Mrs. Oliver contended at all times that she owned the land.

Just why her then attorney did not take any action to set aside the tax sale is one of the unknown factors in this controversy.

Discussion

The attorneys for the respective parties have filed excellent briefs in support of their contentions.

The United States contends that the petition or motion of Mrs. Oliver was filed too late and is barred by the provisions of Rule 60(b) of the Federal Rules of Civil Procedure. The particular provisions relied upon by the United States are as follows: ·

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party * * *. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

The petitioner, Mrs. Oliver, relies upon the following provisions of the rule:

"* * * (4) the judgment is void; * * * or (6) any other reason justifying relief from the operation of the judgment."

Before the Court may consider a petition or motion to set aside a decree or judgment it must be made to appear that the defendant has a meritorious defense to the action in which the decree or judgment was entered, and ordinarily, if a defense is alleged, the court should determine whether

the motion or petition to vacate has been filed within the time permitted before hearing testimony in support of the defense alleged by the movant or petitioner, and when that procedure is followed, if the petitioner has alleged a meritorious defense the court will proceed to determine whether the motion has been filed in due time. In the instant case the Court directed that all questions involved herein should be tried in one proceeding and that has been done. The Court is convinced that the petitioner or movant has not only alleged a meritorious defense to the claim of the United States, but that such defense is supported by testimony introduced at the trial. However, the Court should first determine whether the petition or motion of Mrs. Oliver is barred by the provisions of the rule above referred to.

■ In the case of Klapprott v. United States, 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 266, the Court said:

"It is contended that the 'other reason' clause should be interpreted so as to deny relief except under circumstances sufficient to have authorized relief under the common law writs of coram nobis and audita querela, and that the facts shown here would not have justified relief under these common law proceedings. One thing wrong with this contention is that few courts ever have agreed as to what circumstances would justify relief under these old remedies. To accept this contention would therefore introduce needless confusion in the administration of 60 (b) and would also circumscribe it within needless and uncertain boundaries. Furthermore 60(b) strongly indicates on its face that courts no longer are to be hemmed in by the uncertain boundaries of these and other common law remedial tools. In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

In commenting upon the above decision of the Supreme Court the learned authors,

Barron and Holtzoff, in 3 Federal Practice and Procedure, Rules Edition, at page 269 said:

"Cases of extreme hardship or injustice may therefore come within a more liberal dispensation than a literal reading of the rule would allow. And indeed there is little reason why a motion or application for relief from a judgment should not be considered in the same broad perspective as an independent action to vacate or set aside the judgment."

In Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242, the Court at page 245 of the opinion said:

"The recent cases applying Rule 60 (b) have uniformly held that it must be given a liberal construction. Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. Henry v. Metropolitan Life Ins. Co., D.C.Va., 1942, 3 F.R.D. 142, 144. Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. Huntington Cab Co. v. American Fidelity & Casualty Co., D.C.W.Va., 1945, 4 F.R. D. 496, 498; Standard Grate Bar Co. v. Defense Plant Corp., D.C.Pa., 1944, 3 F.R.D. 371, 372. Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments. We are of the opinion that the court below applied a standard of strictness rather than one of liberality in concluding that justice did not require that the judgment be set aside."

■ The United States further contends that even though the petitioner or movant, Mrs. Oliver, is not barred by the one year limitation provision in the rule, she did not file her petition or motion "within a reasonable time" as required by the rule, and the argument is made that she delayed for twenty-two years before she took any action to have the tax sale set aside or declared void. It is true that the land was sold to the State of Arkansas on June 9, 1930, but at

that time O. M. Oliver, the husband of the petitioner and movant, was living with his family on the farm, and he continued to live there with his family until 1939 when, for some unknown reason, he abandoned them and the farm. In the meantime the government had acquired its deed from the State, but Mrs. Oliver and the children remained in possession of the land and the government recognized their rights by various negotiations for the purchase of the land from Mrs. Oliver. Mrs. Oliver never acquired the legal title to the land until her husband executed a quitclaim deed to her on June 12, 1948. At that time she was consulting her attorney in Van Buren and had every reason to believe that her attorney would protect her rights in the property. It would be inequitable, in view of the facts disclosed by the testimony, to hold that she has not acted within a reasonable time.

In the case of Assmann v. Fleming, 8th Cir., 159 F.2d 332, 336, the Court said:

"It is elementary that courts favor the trial of causes of action upon their merits, and hence, judgments by default or by confession are within the rule conferring power on courts to open or vacate their own judgments. The action of a trial court in either granting or refusing an application to vacate a judgment is generally speaking within the judicial discretion of the court. The discretion is not an arbitrary one to be capriciously exercised, but a sound legal discretion guided by accepted legal principles."

In Barron and Holtzoff, 3 Federal Practice and Procedure, Rules Edition, Section 1323, page 253, it is said:

"The discretion should ordinarily incline towards granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue. Equitable principles may be a guide in administering relief."

The United States gave no consideration to obtain the deed from the State of Arkansas. The land was donated by the State to the federal government. It has expended no money on the land since the deed was ac-quired. The Forest Rangers and the Supervisor have at all times recognized the interest of Mrs. Oliver in the land. She and her children lived on the land until the year 1948 when the dwelling thereon burned, and since that time she has kept the fences in repair and has used the land for agricultural purposes.

No doubt persons with more experience, education and general knowledge would have taken effective steps to preserve and protect their interest in the land, but under the conditions that existed the neglect of Mrs. Oliver to take such action was "excusable neglect." She did what practically every woman with the experience of Mrs. Oliver would have done. She employed a lawyer and depended upon him to do whatever was necessary to bring the facts before the Court before the decree of confirmation was entered in favor of the government.

■ Under the facts reflected by the record, it appears inequitable to deny the right of Mrs. Oliver to question the title of the United States.

This brings the Court to the question of whether the tax sale under which the United States claims title is void or voidable.

■ The facts disclose that the land was sold for an amount in excess of the maximum chargeable under the law. The maximum cost was exceeded by five cents on each tract, and under the law that destroyed the power of the State of Arkansas to sell the land.

In Lumsden v. Erstine, 205 Ark. 1004, 172 S.W.2d 409, 410, 147 A.L.R. 1132, the facts, insofar as the validity of the tax sale is concerned, are identical with the facts in the instant case. There the land was sold to the State in 1930 for the taxes of 1929 and was certified to the State in 1932 as in the instant case. However, in the Lumsden case there was a confirmation of the tax sale by the Chancery Court under Act No. 119 of the Acts of 1935, and the State, after having its title confirmed, then sold the land to an individual. Notwithstanding the tax sale had been confirmed, the appellant, Lumsden, after obtaining his deed by mesne conveyances from the owner at the time of the tax sale, brought a suit to set aside the tax sale. It

was agreed in that case by the parties "that the aggregate amount for which the lands here involved were sold for the taxes due for the year 1929 included costs which were five cents in excess of the total costs permitted to be charged."

In the instant case the excess costs for which the land was sold were five cents on each tract.

The Court in discussing the question at page 1011 of 205 Ark., at page 412 of 172 S. W.2d said:

"Some may say that the 5¢ excess in the case at bar is too small to upset a tax sale; but this court has held otherwise. In Cooper v. Freeman Lbr. Co., 61 Ark. 36, 31 S.W. 981, 983, 32 S.W. 494, this court, speaking through Justice Hughes, said: 'The smallness of the amount of the excess over the amount due does not, in a tax sale, affect the question, as the maxim, 'de minimis non curat lex', does not apply to tax sales. The provisions of the law made for the protection and benefit of the taxpayer are mandatory.'

"And in Sec. 233 of Black on Tax Titles cases from many jurisdictions are cited to show that the smallness of the excess cannot make legal the void sale. If the excess is as much as one cent, then the Power to Sell is vitiated. In the case at bar it was stipulated that the excess was five cents. If a citizen's property can be taken from him by the sovereign for an excess of five cents, then by the same token it can be taken from him for an excess of five million dollars. If a citizen's rights and property are to be safe, then they must be kept safe against little exactions as well as against large encroachments. The constant drip of water will wear away the largest stone; and if the sovereign by constant inroads in small things is allowed to take the citizen's property, then the rights of private ownership are gone to the realm of Limbo. Courts are to protect the rights of citizens— that is one of the reasons for the existence of judicial tribunals." See also, Cohn v. Little et al., D.C.W.D.Ark., 101 F.Supp. 683, affirmed in 8 Cir., 199 F.2d 28.

Notwithstanding the fact that the tax sale was absolutely void under the laws of the State of Arkansas, the government contends that the petitioner and movant, Mrs. Oliver, is barred by Section 84–1118, Arkansas Statutes 1947, Annotated, but that question has been decided adversely to the contention of the government in the case of Johnson v. Johnson, 207 Ark. 1015, 183 S. W.2d 783.

■ There is no statute in Arkansas which limits the right of an original owner to attack a tax sale so long as the original owner remains in possession of the land. Here, Mrs. Oliver has been in possession and is now in possession of the land, and she has the right to attack the sale and if it is found to be void or voidable to have it set aside. Johnson v. Johnson, supra.

■ A portion of the land was sold under a void description and was certified to the State and conveyed by the State to the government under such void description, and this in itself is sufficient to avoid the sale, particularly as to the tracts of 14.5 acres which is contiguous to the other land. Wilkerson v. Johnston, 211 Ark. 170, 200 S.W. 2d 87.

Therefore, the petition or motion of Mrs. Oliver to set aside the decree quieting and confirming the title in the United States is not barred and the tax sale under which the government claims title to the land is void and the decree should be set aside.

Conclusions Of Law

1.

The Court has jurisdiction of the subject matter and the parties hereto.

2.

The tax sale of June 9, 1930, at which the lands herein involved were sold to the State of Arkansas, is void, and the State of Arkansas acquired no title to the land by reason of said sale.

3.

The United States acquired no title to the land by reason of the conveyance from the State of Arkansas to it on October 9, 1935,

which deed is now of record in deed record book 142 at page 43 of the deed records of Crawford County, Arkansas, and said deed should be cancelled as a cloud upon the title of the petitioner and movant, Mrs. Mrytle Oliver.

4.

The decree of the Court rendered herein on August 29, 1949, and as modified on January 9, 1950, should be set aside and held for naught.

5.

Mrs. Oliver is the owner of the SW¼ NE¼; S½ NW¼; and 14.5 acres out of the N½ SW¼, being a strip of land 14.5 rods wide along the entire north side of said SW¼; containing 134.5 acres, more or less, in Sec. 20, Township 11 North, Range 31 West, in Crawford County, Arkansas, and her title to the same should be quieted and confirmed as against the United States of America.

A decree in accordance herewith should be entered.