NOUATA OF NU'UULI, Appellant,
v.
PASENE OF NU'UULI, Appellee.

High Court of American Samoa
Appellate Division

AP No. 07-79

July 11, 1980

Before KENNEDY*, Acting Associate Justice, presiding, MURPHY, Associate Justice, TURRENTINE**, Acting Associate Justice, TA'IAU, Associate Judge, and ASUELU, Associate Judge.

KENNEDY, Acting Associate Justce.

This appeal from the Trial Division requires us to decide what relief, if any, is available to appellants, who seek to set aside a judgment that is now nearly fifty years old. We affirm the ruling of the Trial Division, having concluded that the movants below (appellants here) advance no theory upon which the court may grant relief from the judgment they seek to attack in these proceedings. The factual and procedural history of this complicated case was well stated by Chief Justice Miyamoto in a very thorough opinion rendered in the Trial Division, and in part I of our

opinion we borrow from that recitation. Our reasons for holding that the appellants are not entitled to relief differ somewhat from those adopted by the Trial Division, and we explain those conclusions further below.

## FACTS AND PRIOR PROCEEDINGS

Chief Justice Miyamoto accurately described the history of this case as follows:

"On June 12, 1978, [movant] Tavete M. Puailoa, senior matai of the Puailoa family of Nu'uuli, Tutuila, American Samoa, filed a motion for new trial or, in the alternative, to set aside the judgment in the case Nouata of Nu'uuli v. Pasene of Nu'uuli, LT No. 18-1930 (1931). Judgment had been announced June 9, 1931, following a trial on that date. [The movant is the successor in interest of plaintiff, one Nouata, and his motion for post-trial relief is based on] Article I, sections 2 and 3 of the Revised Constitution of American Samoa, 1 ASC 2, 5 ASC 412(b), 11 ASC 801(a), 11 ASC 5122(1), Rule 60(b) of the Federal Rules of Civil Procedure and Rule 20, Rules of the High Court of American Samoa. The relief requested would not be extraordinary except that 47 years elapsed between the filing of the judgment and the filing of the motion for new trial or other relief.

"The underlying dispute involves the ownership of approximately 360 acres of land known as Malaeimi in the village of Mapusaga, Tutuila, American Samoa. A portion of Malaeimi was under the control, or pule, of Puailoa Vaiuli, the predecessor in interest of the original and present plaintiffs in this action, at the time of his death in 1929. That Puailoa Vaiuli had an interest in at least part of Malaeimi was established in a series of proceedings including a hearing before the Land Commission in Apia, Western Samoa and several cases heard in the High Court of American Samoa. In Taisi v. Puailoa, 1 ASR 194, 195 (1909), we held that Puailoa's "claim of ownership to land Malaeimi arises from the undisputed overlordship of the name Puailoa over all Malaeimi not controlled by Fanene..."

"Puailoa Vaiuli leased part of Malaeimi to the Church of Jesus Christ of the Latter Day Saints in 1908 for a term of 40 years, and much of the controversy surrounds this lease. Puailoa Vaiuli died in 1929, during the term of the lease, leaving the Puailoa family without a senior matai, or chief. In Samoan custom, it is the matai who controls communal lands of the family. Aumavae v. Moefaauo, 1 ASR 38 (1902). Pasene, original respondent in this action, claimed the matai title Puailoa and registered the title with the Secretary of Native Affairs, as required by law. Nouata, original petitioner herein, filed his objection to [Pasene's] registration. The registration of a matai title and the filing of an objection thereto constituted the pleadings, and an action was brought upon this issue in the High Court of American Samoa in 1930.

"In the meantime, before the matai title case could be brought to trial, the Mormon Church, lessee of land Malaeimi, had asked the Secretary of Native Affairs for advice as to who was entitled to rent payments following the death of Puailoa Vaiuli. Apparently, both Salataima Puailoa, the widow of Vaiuli, and other members of Puailoa Vaiuli's family were claiming the right to the payments. The Secretary of Native Affairs advised that the payments be made to the Secretary until such time as the High Court could resolve the question.

"No pleadings concerning the issue of ownership of land Malaeimi or entitlement to payments from the lease of this land were filed, nor was Salataima Puailoa, one of the claimants of the land, joined in the action. Nouata v. Pasene was seemingly a dispute over succession to the matai title Puailoa. However, as Chief Justice Wood later wrote in a memorandum to

Governor G.S. Lincoln, although it was primarily a _matai_ title case, "it seemed to the court for the best interest of all parties concerned that it be immediately ascertained to whom the rents derived from...Malaeimi should be paid." Plaintiff's Exhibit 19. In the same memorandum, Chief Justice Wood informed the Governor that there had been no pleading directed to the issue of ownership of land Malaeimi. Nonetheless, Judge Wood advanced the case on the calendar ahead of 25 other cases in order to resolve the dispute over lease payments, of which he presumably had been informed by the Secretary of Native Affairs.

"After trial on June 9, 1931, the court ruled from the bench that the title Puailoa be awarded to plaintiff Nouata. In addition, the court held as follows, thereby engendering the present dispute.

As to the land Malaeimi, it is also the unanimous decision of the court that that part of Malaeimi that is leased to the Mormon Missionaries is the property of the widow of Puailoa and that she should have, during her life time, the rents.

As to the other lands of Puailoa the court decides that they should be held by Puailoa as the _matai_ of the Puailoa family for the benefit of the whole family. _Nouata of Nu'uuli v. Pasene of Nu'uulli_, LT No. 18-1930 (1931).

"Following the announcement of judgment, according to the allegation of the present plaintiff, Nouata waited some weeks and then made oral protest to Chief Justice Wood, the presiding justice. Purportedly, "the delay was undertaken so as not to offend the court in the custom of fa'a Samoa [the Samoan way]." Memorandum by Puailoa in Response to Objections against his Motion to Reopen [hereinafter Plaintiff's Reply Brief] at 3; Plaintiff's Exhibit 6. Plaintiff later petitioned the governor of American Samoa to reconsider the court's decision, and apparently sent a letter of protest to a Senator Bingham (not further identified), although no copy of the letter to Senator Bingham is in the record. Nouata sent a second petition to the Governor along with a copy of his letter to the Senator. Plaintiff's Exhibit 6,7,8, and 15.

"The petition to the governor charged that Chief Justice Wood was improperly influenced by Soliai, counsel for plaintiff Nouata, and that Soliai was working in cahoots with Salataima against his own client's interests. Soliai allegedly undermined Nouata's case as to ownership of the land Malaeimi by arranging to call only one witness on Nouata's behalf, the widow Salataima Puailoa, who supported Nouata's claim to the Puailoa title but advanced her own claim to Malaeimi at the same time. According to Nouata's letter to Governor Lincoln, Nouata's family had expressed a preference for the appointment of one Tago S. as their attorney, but Judge Wood instead appointed Soliai and also because the court interpreter's wife was related to Soliai. Furthermore, it is charged, Soliai had received valuable gifts from Salataima.

"Besides protesting this supposed web of relationships which led to possible inadequate representation for Nouata and improper influence of the court, plaintiff's petition to Governor Lincoln complained that the court had decided in favor of the widow Salataima even though "we did not have a case between Puailoa's family and Salataima." Plaintiff's Exhibit 6, 4. In other words, Nouata claimed that the issue of ownership of land was not properly before the court, as it was not raised by the pleadings and the necessary parties were not joined.

"These petitions were fruitless. The governor denied the first and

ignored the second. Plaintiff's Exhibit 10. But no motion for new trial or for any other post-judgment relief was made to the High Court. Rather, plaintiff Nouata limited his post-trial actions to oral protest to Chief Justice Wood, if plaintiff's allegation is credited, and to letters of protest to the governor and Senator Binham. It should be noted that the Governor of American Samoa at that time had the right to sit as President of the High Court. Also, there was no procedure established by statute or rule for appealing decisions of the High Court. In a memorandum to Governor Lincoln dated October 24, 1931 (the same day that Governor Lincoln denied the petition), Chief Justice Wood explained the procedure for the governor to follow "in the event tht it should be thought expedient by you to recommend a rehearing of this case by resubmitting to the court the question of the ownership of the land involved." Plaintiff's Exhibit 12, 2. Apparently, Chief Justice Wood contemplated that it was within the power of the governor to "recommend" a rehearing.

"Some months after the decision in this case was handed down, the Mormons sought to renew their lease to Malaeimi, although it still had 14 years to run, but the governor refused to approve the renewal (such approval being required under Samoan law) as exceeding the 25 year maximum lease duration permitted under territorial law. Plaintiff's Exhibits 21-24.

"On September 13, 1932, in the case of Tu'utau of Nu'uuli v. Fanene of Nu'uuli, LT No. 1-1931 (1932), Judge Wood affirmed that Salataima Puailoa was entitled to the rental of that portion of the land Malaeimi which was leased to the Mormons, while Puailoa Nouata had the pule of the remainder of Malaeimi. Moreover, he found that Malaeimi is divided by the main road to the village of Leone, and that section of the land to the right (presumably inland) of the road is the Puailoa land, while the section to the left of the road belongs to the holder of the matai title Fanene.

"In 1944, the Mormons renewed their lease to Malaeimi for a second 40 year term at an annual rental of $360 (1 per acre), and this lease was approved by the governor. Plaintiff's Exhibit 27. The following year, the Mormons sublet 100 acres of the 360 to the American Samoa Government for a term of 40 years at an annual rental of $100. Both this lease and the renewal lease to the Mormons were executed by Salataima Puailoa. Plaintiff's Exhibits 28-31.

"Then in 1953, following an amendment to Section 1223 of the American Samoa Code of 1949 making possible the alienation of land other than communal land to non-Samoans, Salataima sold 300 acres of the 360 covered by the lease to the Mormon Church for $30,000. The warranty deed was recorded in the office of the Registrar of Titles, although it does not appear to bear the stamp of approval of the governor. Plaintiff's exhibit 32-34. The remaining 60 acres remained under Salataima's ownership and, after her death, devolved to her brother, Lagafuaina Laisene, now deceased, whose estate is presently in probate. Plaintiff Exhibit 35.

"Finally, in 1974 the Mormons leased two parcels totalling 38.2 acres of the land Malaeimi to the American Samoa for 75 years at an annual rental of $1,000. This land is currently occupied by the American Samoa Government Community College. All the personal property and chattels on these parcels were conveyed to the American Samoa Government for $1,500. Plaintiff's Exhibit 36. The present replacement value of the structures thereon (old and new) was estimated by a witness to be on the order of 4 million dollars.

"Tavete M. Puailoa, plaintiff herein and senior matai of the Puailoa family, filed a petition with the Secretary of the Interior on March 10, 1978, allegedly asking for the return of Malaeimi to the Puailoa family. No copy of this petition appears in the record. The Secretary suggested that

28

Puailoa apply to the High Court for relief. Affidavit of Tavete M. Puailoa. Then on June 12, 1978, plaintiff filed his motion for new trial or to set aside the judgment in this case."

## POSSIBLE GROUNDS FOR POST JUDGEMENT RELIEF

Title II, section 801 of the American Samoa Code provides that civil practice in the High Court shall conform as closely as practicable to the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 60(b) provides a number of grounds for setting aside a judgment. In the Trial Division the appellant sought to set aside the 1931 judgment on the three separate grounds set forth in rule 60(b) (4), (5), and (6), and on various other theories as well. The most significant claim made, both in the Trial Division and on appeal, is based on rule 60(b)(4), allowing void judgments to be set aside. We address that issue at the outset.

A. Rule 60(b)(4): Void Judgments

Appellants' theory is that since Salataima was not a party and the land question was not before the court in 1931 the court's decision in that litigation, to the extent it bears on Salataima's title to the disputed land, was void. We affirm the denial of relief under rule 60(b), but our analysis of the principles which control the case differs from that adopted by the Trial Division. The Trial Division reasoned that, regardless of the merits of the appellants' argument that the 1931 judgment was void, 47 years was simply too long for them to wait before making a motion to set it aside. The issue of the judgment's validity was not reached. The Trial Division's position was elaborated persuasively, but we conclude that the question of validity must be resolved. We hold that the 1931 judgment is valid, and our determination of validity requires affirmance of the Trial Division.

It is true that rule 60(b) requires that motions to set aside a judgment as void must be "made within a reasonable time," but we are reluctant to base our holding on that ground. To do so would be contrary to precedent and to fundamental rules controlling the enforcement of prior judgments. Although we have found one dictum to the effect that the "reasonable time" referred to in rule 60 is a limited time when the basis of attack is voidness, see Vecchione v. Wohlgemuth, 558 F.2d 150, 159 & n.7 (3d Cir.), cert. denied, 434 U.S. 943 (1977), nearly all discussion of the permissible time period for a 60(b)(4) attack is to the contrary. There are authorities to the effect that a void judgment may be attacked and set aside under rule 60 at any time whatever. For example, the following very strong language is found in an authoritative treatise on the Federal Rules of Civil Procedure.

> A void judgment is something very different than a valid judgment. The void judgment creates no binding obligation upon the parties, or their privies; it is legally ineffective. And while, if it is a judgment rendered by a federal district court, the court which rendered it may set it aside under Rule 59, within the short time period therein provided, or the judgment may be reversed or set aside upon an appeal taken within due time where the record is adequate to show voidness, the judgment may also be set aside under 60 (b)(4) within a "reasonable time", which, as here applied, means generally no time limit, the enforcement of the judgment may be enjoined; or the judgment may be collaterally attacked at any time in any proceeding, state or federal, in which the effect of the judgment comes in issue, which means

29

that if the judgment is void it should be treated as legally ineffective in the subsequent proceeding. Even the party which obtained the void judgment may collaterally attack it. And the substance of these principles are equally applicable to a void state judgment.

A party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity, if he establishes that the judgment is void. 7 J. Moore, Moore's Federal Practice section 60.25(2) (1979) (footnotes omitted).

Unlike clauses (1)-(3), a motion under clause (4) is not subject to a maximum time limitation of one year, but like a motion under clauses (5) and (6), the Rule provides that the 60(b)(4) motion must be made within a "reasonable time." What is the meaning of this "reasonable time" limitation with respect to a motion for relief from a void judgment?

The theory underlying the concept of a void judgment is that it is legally ineffective -- a legal nullity, and may be vacated by the court which rendered it at any time. Laches of a party can not cure a judgment that is so defective as to be void; laches cannot infuse the judgment with life. Further, it may, when appropriately called in question, be adjudged void in any collateral proceeding, and this collateral attack may be made at any time. Since a federal judgment that is void can be so collaterally attacked, and since the judgment sustaining the collateral attack would have to be given effect in a subsequent 60(b)(4) motion to set the federal judgment aside as void, the "reasonable time" limitation must generally mean no time limit, although there may be exceptionally situations where the reasonable time limitation would require diligence on the part of the movant. Id. at section 60.25(4) (footnotes ommitted).

Although motions to set aside a judgment based on voidness are usually made within several months of the judgment's being entered, we have found cases in which the period of time is much longer, in one case as long as thirty years. See Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir.), cert. denied, 373 U.S. 911 (1963) (30 years); United States v. Williams, 109 F. Supp. 456 (W.D. Ark. 1952) ( 3 years); State v. Romero, 76 N.M. 449, 415 P.2d 837 (1966) (8 years, state version of rule 60(b)(4)). Although the equitable considerations that argued against setting aside the judgment were far weaker in these cases than in the case before us, we think an inquiry into the substance of the claim that the judgment is void is the required approach. We find no case in which relief under rule 60 (b) (4) was denied either in spite of a holding that the earlier judgment was void, or without the necessity of first resolving the voidness issue, although Professor Moore has suggested that such a holding might be correct in some cases. See 7 J. Moore, Moore's Federal Practice, section 60.25(4) & n. 9 (1979).

For the remainder of our discussion, it must be kept in mind that the distinction between a valid judgment and a void judgment has nothing whatever to do with whether the judgment was a correct or desirable result. A judgment which a court has the power to make, and one which rendered in accordance with minimal standards of due process, is a valid judgment, even if it is incorrect.

It is only in the most extraordinary situations that a court of general jurisdiction will be held to have rendered a void judgment. Default judgments are generally the only cases in which even a plausible argument can be made that the judgment is void. A judgment may be void if the rendering court has clearly usurped power in the litigation, or if there is no jurisdiction over the party against whom the judgment is rendered, or if there is no notice to that party or opportunity to appear and be heard in the suit. A mere procedural irregularity that falls short of either a usurpation of power or a clear denial of an opportunity for a party to defend the interests at stake falls far short of rendering a judgment void. See generally J. Moore, supra at section 60.25(2). The requirements of a valid judgement have been stated concisely as follows:

> Section 4. Requisites of a Valid Judgement.
>
> A court has authority to render judgment in an action when the court has jurisdiction of the subject matter of the action, as stated in section 14, and
> (1) The party against whom judgment is to be rendered has submitted to the jurisdiction of the court, or
> (2) Adequate notice has been afforded the party, as stated in section 5, and the court has territorial jurisdiction of the action, as stated in section 7 to 12.
> Restatement (Second) of Judgments section 4 (Tent. Draft 1978).

In this case it is clear that the predecessor in interest of the party making this motion submitted himself to the jurisdiction of the trial court in the 1931 litigation and therefore had sufficient notice of the pendency of the suit. The only way, then, that the irregularity allegedly commited by the 1931 court in making a determination concerning the status of the land can be grounds for finding the judgment void is if the determination was so remote from the subject matter of the litigation that the court could not adjudicte the two matters simultaneously. This would follow if either the original plaintiff had no reason to suspect that the status of the land was or would be involved in the court's decision, or the relation between the matai title dispute and the status of the land was so tenous as to make their joint determination totally irrational. The following two rules provide some guidance in determining this question:

> Section 12. Jurisidiction Over Litigants Concerning Other Claims.
>
> A court may exercise jurisdiction over a person who is a party to a pending action in that or another court of the state in which the court is located when the claim involved arose out of the transaction that is the subject of the pending action or is one that may in fairness be determined concurrently with that action.
>
> Section 61. Dimensions of "Claim" for Purposes of Merger or Bar--General Rule Concerning "Splitting."
>
> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see sections 47 and 48), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

31

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Id. at sections 12, 61.

Cf. McAdama v. Fireman's Fund Ins. Co., 203 Kan 123, 452 P.2d 851, 855 (1969) ("court has jurisdiction to decide only such issues as are raised by the pleadings or defined in the pretrial order, with the limited exception of new issues raised by evidence to which there is no objection.") (emphasis in original) (citation ommitted).

The record indicates the parties tried the action on the theory the district court was sitting both as a court of law and as a court of equity and on the theory the case should settle all issues between the parties so as to avoid further litigation. At issue was the exact nature of the involvement of Cunningham in the transaction complained of by the plaintiff, which included real estate transactions and mortages, and whether those transactions and mortages were legal or void...No objections were made to a great deal of the evidence introduced during the course of of the trial which tended to establish fraudulent conduct on the part of Cunningham. Since such evidence was admitted without objection, and since Cunningham had the opportunity to answer and cross-examine the witnesses, no error can be predicated thereon. Id.

We follow these authorities and hold that the court in the 1931 matai title case had authority to render its determinatin regarding the payment of rentals. The two subjects were related with respect to the parties involved, the facts bearing upon the cases, and the relief sought from the court. We believe that this rule is particularly appropriate as applied to a dispute in Samoa in 1931, where technicalities of pleading should not be strictly applied. To apply rules 12 and 61 of the Second Restatement we must turn to the background of the 1931 lawsuit and the transcript of the proceedings therein. We note two points parenthetically: First, it is cler that the court in the 1931 case had the power, which it frequently exercised, to determine the status of land, and second, whatever irregularity was present in the court's joint determination of the two issues might more plausibly be a ground for a voidness attack if the decision had gone the other way, and if the party attacking the judgment as void (Salataima) had not been a party in the 1931 decision.

It should be noted that in the heated atmosphere preceding the 1931 decision it was apparently understood by all parties that the status of the land Malaeimi, whether personally belonging to Salataima or whether communal, was in dispute as well as who could lawfully claim the matai title Puailoa. Concerning the instant motion, Chief Justice Miyamoto's opinion for the Trial Division, persuasively we think, suggests that it was also understood by all people involved that the High Court was likely to resolve the two disputes simultaneously. Examination of the transcript of the

32

trial, as well as the 1931 decision itself, reveals that the two matters were inextricably interwined, and this fact, as well as the aforementioned public controversy preceding the trial, makes it clear that the plaintiff in the 1931 decision, who was apparently the party adversely affected by any determination of the status of the land Malaeimi, was reasonably and actually notified that the two matters would be jointly resolved.

One of the critical factors in Judge Wood's 1931 decision that Nouata was entitled to the matai title Puailoa was his predecessor's — Vaiuli— relationship in the past with the very piece of land in question. It was, apparently, important that Vaiuli played a decisive role in defending the land from the claims of an American corporation in an earlier lawsuit in 1909. Because Vaiuli had rendered this service to the family in defending the land from these claims, the court was inclined to respect Vaiuli's choice of a successor, namely, Nouata.

The following account, then, is a simplified version of one aspect of the 1931 litigation that illustrates the interelationship between the matai title issue and the question of the status of the land Malaeimi. There were in 1931 two candidates for matai title: Nouata, the candidate preferred by the deceased matai Vaiuli, and Pasene, a candidate preferred by another important figure, named Fanene. There was a clear dispute as to whether the Fanene faction or the Vaiuli faction was primarily responsible for the earlier decision protecting the land Malaeimi from the American corporation. The amount of discussion at the trial about this earlier controversy implies that the question of which faction had historically taken a more active role in protecting the family's interests bore upon the question of which faction ought properly to nominate the successor to the matai title. Thus, it was quite important for Judge Wood to determine precisely what Salataima's husband's historical connection with the disputed land was. Given this interrelation between the disputes, it was reasonable for Judge Wood to credit Salataima's testimony that because of her deceased husband's active protection of the disputed land, she was entitled to the rents personally.

We conclude that Judge Wood's decision to determine both issues in the case was well within the court's jurisdiction over the subject of the case before it. As a logical matter, selection of the best candidate for the matai title was at least in some respects contingent upon resolving a long-standing and complex controversy about the relationship of various people to the disputed land. The public uncertainty about who ought to receive the rents for the use of the land, as well as the focus, during the course of the trial, on the status of the land, suggest that it was generally expected by all concerned with the litigation that the two questions were and ought to be determined jointly. Determination of land disputes was within the competence of the court in 1931, because the party against whom the rental question was apparently decided had submitted himself to the jurisdiction of the court and either expected the question to be decided in the lawsuit or at least did not object to the subsequent emergence during the trial of the current status of the land as a major issue, and finally, the land or rental claim is one that could "in fairness" be decided in conjunction with the matai title claim. We hold, accordingly, tht Judge Wood's 1931 decision, to the extent it bears upon the status of the land Malaeimi, was not void.

## B. Other Provisions of Rule 60(b)

Appellants also seek to set aside the judgment under rule 60(b) (5) or 60(b)(6), but we reject these arguments. Subsection (b)(5) applies only in situations where a temporary factual underpinning of an order has ceased to exist, as when an order to pay damages is no longer appropriate because the

33

claim has been satisfied in some way different from that contemplated by the order, or there is an implicit limitation to the time during which a prospective judgment is to be given effect. See, e.g., Jackson v. Jackson, 276 F.2d 501 (DC Cir.), cert.denied, 364 U.S. 849 (1960); Loney v. Scurr, 474 F. Supp. 1186 (S.D. Iowa 1979); John W. Johnson, Inc., v. J.A. Jones Constr., Co., 369 F. Supp. 484, 498 (E.D. Va. 1973). Neither condition applies in this case.

Subsection (b)(6) appears on its face to be the broadest basis for relief, requiring simply "any other reason justifying relief from the operation of the judgment." It has been construed not to apply to situations covered by other subsections of rule 60(b), Williams Skillings & Assocs. v. Cunard Trans, Ltd., 594 F.2d 1078 (5th Cir. 1979); United States v. Cirami, 563 F.2d 26 (2d Cir. 1977), nor to a full and conscious choice regarding conduct of the litigation. id.; Bell Tel. Laboratories, Inc. v. Hughes Aircraft Co., 73 FRD 16 (D. Del. 1976). Appellants' assertion that their 47 year delay was to conform to Fa'a Samoa and avoid offense is an example of the latter situation. Subsection 60(b)(6) is to be used only in the most extraordinary circumstances, such as when a party is prevented by physical duress from protecting his interests in court. The trial court's comparison of the two cases of Klaprott v. United States, 335 U.S. 601 (1949), and Ackermann v. United States, 340 U.S. 193 (1950), to this case correctly demonstrates why (b)(6) is not available.

A further reason why the Trial Division was correct in refusing to apply rule 60(b)(5) or (6) is that under these subsections, unlike 60(b)(4), the reasonable time period is not open-ended. The 47-year delay on the facts of this case was conclusively unreasonable with respect to these two subsections.

The various allegations of fraud, mistake, etc., do not suffice to invoke subsections (b)(1), (2), or (3) of the rule because these require that a motion be made within one year.

C. Other Grounds for Relief

Various other grounds for relief, some discussed at more length by the trial court, may be briefly disposed of here. Appellants in several ways advance the argument that the 1931 decision permitted an illegal alienation of communal land, thus frustrating congressional policy or the fifth amendment by depriving the family of property without due process. As successors in interest to parties bound by the 1931 judgment, appellants cannot now attack it on these grounds. The argument, in addition, is somewhat circular, inasmuch as it relies on a premise that Malaeimi was communal land before the 1931 decision. As the appellants themselves interpret the decision, the court held that it was not then communal land and had not been for some time. Whether or not the court was authorized to conclude this, as to these parties, is a question we have already discussed.

The same element of circularity undercuts analogies to cases cited by appellants, such as Oneida Indian Nation v. County of Oneida, 434 F. Supp. 527 (N.D. NY 1977), arising under the Indian Non-Intercourse Act of 1970. The act restricts alienation of tribal lands. Putting aside the very doubtful proposition that the Samoans were intended to be covered by that Act, given its historical and administrative context, it remains that the land must first be shown to be tribal or communal before the principle of attacking land transfers after a long lapse of time can be brought into play.

The appellants' arguments based on alleged historical or contemporary injustices are not completely clear. They argue, for example, that the 1900

Instrument of Cession is invalid as to them and does not alter their immunity from the sovereignty of the American Government. Yet, in the same paragraph they argue that a nonalienation policy of the Instrument of Cession should be applied against the appellees because it is the supreme law of American Samoa. Without in any way passing on the merits of these arguments, we note that they are more appropriately made in a legislative, rather than a judicial, forum.

We therefore conclude that no basis for relief from the 1931 judgment has been presented to us, and the order below is affirmed. We intimate no views as to the interpretation of the 1931 decision or its bearing on the ultimate question of title, only that it is valid as to these parties. It is important for appellants to realize that even if grounds existed for granting their motion, this would by no means insure the ultimate result that they argue is just. The immediate cost of granting their motioin would be that a judgment nearly one-half century old would be set aside. The status of Malaeimi would be in more doubt than before, and any further judicial attempt to solve it would be hampered, if not totally frustrated, by the intervening oblivion of first-hand accounts of the events bearing on different claims to the land. These considerations support our holding, since it is not only legally correct, but also desirable as a practical matter and for society that "[t]here must be an end to litigation someday...." Ackerman v. United States, 340 U.S. 193, 198 (1950).

The order of the Trial Division is AFFIRMED.

---

*Honorable Anthony M. Kennedy, United States Circuit Judge, Ninth Circuit, sitting by designation of the Secretary of the Department of the Interior.