[No. 31988-4-I. Division One. December 30, 1993.]

SUBURBAN JANITORIAL SERVICES, *Appellant*, v. CLARKE
AMERICAN, *Respondent*.

*Steven Quick-Ruben,* for appellant.

*Karen F. Jones* and *Riddell, Williams, Bullitt & Walkinshaw,* for respondent.

FORREST, J. — Suburban Janitorial Services (Suburban) appeals the trial court's decision granting Clarke American's (Clarke) motion to vacate a default judgment, contending the court was without authority to do so. We affirm.

Suburban served a summons and complaint on May 28, 1991, on Clarke alleging that Clarke had breached its contract by hiring one or more of Suburban's former employees in violation of a covenant not to compete. Clarke did not respond within 20 days of service. Suburban filed the complaint and obtained a default judgment on June 19, 1991.

In the interim between service and the answer deadline, Clarke's attorney, Wacker, drafted a notice of appearance, answer, and cover letter and sent them to Clarke for approval. For unexplained reasons, Wacker did not actually forward the materials to Suburban until after the default judgment had been entered. In his cover letter to Suburban, Wacker requested that Suburban inform him of its intentions. He received no answer. In a second letter sent 2 months later and received September 3, 1991, Wacker said, "May we presume that your client has dropped this claim and nothing further is required. Please give us your response in writing so that we and our client may close out our file in this matter." Again, no response was forthcoming.

Clarke's first actual notice of the default judgment occurred when it received a copy of an order directing appearance for examination and supplemental proceedings November 9, 1992, approximately 17 months after the default judgment was entered and 13 months after Suburban received Wacker's last letter. Clarke promptly moved to vacate the default judgment, supported by Wacker's affidavit that he had "a good-faith belief" that Suburban had decided not to pursue the matter and would notify him if the case were, in fact, to be filed and litigated. The court vacated the judgment "in the interest of equity and/or pursuant to CR 60(b)(1), 60(b)(4), and 60(b)(11)". Suburban appeals.

I

 The general rule as to vacation of default judgments is well established.

The law favors determination of controversies on their merits and, consequently, default judgments are disfavored. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979).

> A proceeding to vacate a default judgment is equitable in character, and relief is to be afforded in accordance with equitable principles. The court should exercise its authority to the end that substantial rights be preserved and justice done between the parties. *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581 (1968).

*Lee v. Western Processing Co.*, 35 Wn. App. 466, 468, 667 P.2d 638 (1983). A motion to vacate is addressed to the sound discretion of the trial court whose disposition should not be disturbed unless it clearly appears that discretion has been abused.[1] "Abuse of discretion is less likely to be found if the default judgment is set aside." *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). The trial court's duty on such motions was expressed by the Washington Supreme Court:

> The primary duty of courts in considering motions to set aside default judgments is to inquire whether or not the moving party against the default has a defense on the merits. If it clearly appears that a strong defense on the merits exists, the courts will spend scant time inquiring into the reasons which resulted in the entry of the order of default.

*Yeck v. Department of Labor & Indus.*, 27 Wn.2d 92, 97, 176 P.2d 359 (1947).

In exercising its discretion to vacate a default judgment under CR 60(b), the trial court must first decide whether substantial evidence exists to support a defense to the claim.

The purpose of this inquiry is to prove to the court a meritorious defense to the claim exists and a subsequent trial would not be useless.[2] Any prima facie defense to the plaintiff's claim, albeit tenuous, is sufficient to support a motion to vacate a default judgment.[3] "A strong defense requires less of a showing of excuse, provided the failure to appear was not willful." *Calhoun v. Merritt*, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986).

---

[1] *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979); *see also Hill v. Kemp*, 833 F.2d 927 (11th Cir. 1987).

[2] *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d at 583.

[3] *C. Rhyne & Assocs. v. Swanson*, 41 Wn. App. 323, 328, 704 P.2d 164 (1985).

Clarke sets forth two defenses.

First, it argues that no breach occurred. Clarke terminated its agreement with Suburban and subsequently contracted with Lara Projects for janitorial services. Under the terms of the new agreement, Lara Projects had complete control over hiring of its employees. Because Clarke and Lara Projects were two separate business entities, Clarke argues it was not responsible for and had no control over Lara Projects' hiring decisions. In support of this argument in its motion to vacate, Clarke attached an affidavit of Lisa Huntley, plant accounting manager of Clarke, and a copy of its agreements with Suburban and Lara Projects.

Second, Clarke contends the covenant not to compete is unenforceable because it is unreasonable, citing for support *Perry v. Moran*, 109 Wn.2d 691, 748 P.2d 224, *cert. denied*, 492 U.S. 911, 106 L. Ed. 2d 577, 109 S. Ct. 3228 (1989). Facially, both contentions have merit and a subsequent trial would not be useless.

The second step in evaluating a motion to vacate a default is the reason for the party's failure to timely appear and defend, which includes his or her diligence in moving to vacate. Wacker served his appearance and answer 15 days after the time to answer had expired. His followup letters showed a desire to defend; his reliance on the lack of an answer to his letters, while less than total diligence, is not gross neglect. In view of the strength of the asserted defenses and the understandable nature of the attorney's error, there is no doubt that, had the application to set aside the default been made within 1 year, it would have been granted. Indeed, Suburban concedes as much, but argues that the court was without power to grant relief.

## II

The portions of CR 60 material to this appeal are as follows:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . . .

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

Also material is CR 6(b), which in relevant part states:

[T]he court for cause shown may at any time in its discretion, (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or, (2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under rules 50(b), 52(b), 59(b), 59(d), *and 60(b)*.

(Italics ours.)

■ Suburban contends that the trial court was precluded from using CR 60(b)(1) because the motion to vacate occurred more than 1 year after a default and also more than 1 year after Wacker's last letter. We agree. CR 6 specifically excludes CR 60(b)'s time provisions from enlargement by the court. Case law supports the application of the rule as written.[4]

### III

■ Clarke argues that, even if relief is barred under CR 6 and CR 60(b)(1), the court was authorized to grant relief under CR 60(b)(4) and (11).[5] Neither section contains any explicit time limitation so the courts have required that

---

[4]*Lee v. Western Processing Co.*, 35 Wn. App. 466, 667 P.2d 638 (1983); *Miebach v. Colasurdo*, 102 Wn.2d 170, 685 P.2d 1074 (1983) (motion to vacate default judgment on grounds of [CR 60(b)(1)] must be made within 1 year of judgment's entry), *aff'g* 35 Wn. App. 803, 670 P.2d 276 (1984).

[5]"(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
" . . . .

application for relief be made within a reasonable time.[6] The critical period in determining whether a time is reasonable is the time between learning of the default judgment and filing the CR 60 motion. Here, Clarke applied for relief promptly upon learning that judgment had been taken against it. Nor does the time of 17 months from judgment and 13 months from the last letter preclude relief.[7] Accordingly, we hold that Clarke's application was made within a reasonable time under both subsections.

## IV

■ Suburban argues that relief cannot be granted under subsection (b)(4) because the "fraud"[8] did not cause entry of the judgment. Since CR 60 addresses relief from judgments, it is unsurprising that most of the cases contain language indicating that the allegedly fraudulent conduct "must *cause* the entry of the judgment". *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991).[9] Here, however, the claim of fraud is based on Subur-

---

"(11) Any other reason justifying relief from the operation of the judgment." CR 60(b)(4), (11).

We note for purposes of our analysis that Fed. R. Civ. P. 60(b)(3) and (6) respectively are the federal counterparts to the above sections and, thus, federal decisions may be considered an aid in reaching their appropriate construction. *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 371, 777 P.2d 1056, *review denied*, 113 Wn.2d 1029 (1989).

[6]*See Federal Land Bank v. Cupples Bros.*, 889 F.2d 764 (8th Cir. 1989); *Clarke v. Burkle*, 570 F.2d 824 (8th Cir. 1978).

[7]*See United States v. Karahalias*, 205 F.2d 331 (2d Cir. 1953) (applying Fed. R. Civ. P. 60(b)(6), court found 17-year delay not unreasonable); *Marquette Corp. v. Priester*, 234 F. Supp. 799 (E.D.S.C. 1964) (15-month delay not unreasonable); *United States v. Williams*, 109 F. Supp. 456 (W.D. Ark. 1952) (3-year delay not unreasonable).

[8]We note that the rule contemplates a very broad definition of fraud when it refers both to extrinsic and intrinsic fraud and includes misrepresentation or other misconduct by an adverse party. For convenience we will refer to subsection (4) as the fraud section.

[9]*Cf. Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 77 P.2d 1056, *review denied*, 113 Wn.2d 1029 (1989).

ban's failure to respond to the two letters, leaving defendant's counsel without any reason to know that a default judgment had been entered against his client and to believe that the matter had ended. All cases cited by Suburban[10] are readily distinguishable, because in those cases there was no claim of fraud occurring subsequent to the entry of judgment.

Suburban relies on a statement by a federal court that "[d]efendants must establish that the alleged misconduct of plaintiff was of a type that prevented them from fully and fairly presenting their case." *Simon v. Pay Tel Mgt., Inc.*, 782 F. Supp. 1219, 1227 (N.D. Ill. 1991). Our facts fall squarely within that language. Here the alleged misconduct in failing to respond to the letters prevented Clarke from applying for relief under CR 60(b)(1), which, as we have already indicated, would have been granted, and, hence, prevented Clarke from fully and fairly presenting its case.

No cited case has specifically held that relief under subsection (b)(4) can never be granted by reason of conduct occurring after the entry of judgment. Indeed, such a holding would unreasonably and unfairly cramp the application of a remedial rule aimed at insuring that parties have an opportunity to litigate their defenses.[11] For example, if the defendant had responded by a letter, or by telephone conversation, to Clarke's inquiry by stating, "we are taking no further action in this matter. You may close your file", there is absolutely no question that Clarke would be entitled to relief under subsection (b)(4). Accordingly, we hold that the fact that the acts complained of occurred after the entry of judgment does not bar relief.

---

[10]*See Lindgren; Hickey; Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 67 L. Ed. 719, 43 S. Ct. 458 (1923); *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir. 1987); *Babigian v. Association of Bar*, 144 F.R.D. 30 (S.D.N.Y. 1992); *Simon v. Pay Tel Mgt., Inc.*, 782 F. Supp. 1219, 1227 (N.D. Ill. 1991); *In re Crist*, 99 Bankr. 878, 879 (Bankr. N.D. Ill. 1989); *Plattner v. Strick Corp.*, 102 F.R.D. 612, 614 (N.D. Ill. 1984).

[11]*Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 599 P.2d 1289 (1979) (trial court should exercise its authority liberally, as well as equitably, to preserve substantial rights and fairly and judiciously achieve justice between parties).

## V

On the merits, the issue is whether counsel's silence justifies relief. Litigation is an adversarial process. Counsel are not bound to call attention to every mistake, oversight or assumption of opposing counsel. Not every inquiry or statement in the form "if we do not hear, we will assume" is going to make silence a misrepresentation. Indeed, such cases will be rare.

■ Our holding is strictly limited to the facts of this case: Clarke had asserted two strong defenses, had served an appearance and answer 15 days after they were due and had no reason to know that Suburban had immediately taken a default judgment at the expiration of the 20-day period. Counsel then wrote the two letters, the last stating, "May we presume that your client has dropped this claim and nothing further is required." In these circumstances, counsel's failure to reply conveyed the same meaning as saying "we are taking no further action".

There is no question that Suburban's counsel deliberately did not answer the letters, intending or hoping that silence would lull Clarke into assuming that the matter was at an end. By waiting 1 year to preclude relief under subsection (b)(1), he would be able to enforce his default judgment and not be called upon to prove his client's case to the court. Indeed, counsel candidly does not contend otherwise. Instead, he asserts that, in furtherance of his client's interests, he was entitled, if not obligated, to try and take advantage of Clarke's obvious misunderstanding of the state of the lawsuit. We disagree.[12]

It is well established that in other factual situations silence may constitute a representation.[13] Silence may also generate

---

[12]Holding that counsel's actions justify the court in granting relief from a default judgment does not mean or intimate that counsel violated the Rules of Professional Conduct. That issue is not before us and we express no opinion thereon.

[13]*Atherton Condominium Appartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 523-25, 799 P.2d 250 (1990).

an estoppel.[14] Additionally, two cases bearing factual similarities support relief on the merits. In *Stuski v. United States Lines*, 31 F.R.D. 188 (E.D. Pa. 1962), the plaintiff had filed identical actions in state and federal court. The defendant filed a notice of appearance and answer against the claim in state court but was not aware of the federal court filing. The plaintiff procured a default judgment. However, the Federal District Court set it aside on the ground that the plaintiff had not attempted to remind the defendant that he had failed to enter a similar appearance and answer in federal court.[15] Similarly in *Cavalliotis v. Salomon*, 357 F.2d 157 (2d Cir. 1966), the court upheld a motion to vacate a default judgment, citing among its reasons the fact that the defendants' attorney knew about the dismissal but did not inform the plaintiff. Specifically the court determined that part of the plaintiff's reason for not receiving notice of the dismissal was the "knowing silence of the defendants and their counsel." *Cavalliotis v. Salomon*, 357 F.2d at 159. We find that on the merits Suburban's counsel's silence in this factual context justifies relief under CR 60(b)(4).

## VI

Even if we were to hold that counsel's letter did not generate a duty to speak, and that the failure to respond was not a misrepresentation, we would still hold that these facts constitute a persuasive "other reason justifying relief from the operation of the judgment." CR 60(b)(11).[16]

---

[14]*Howard v. DiMaggio*, 70 Wn. App. 734, 739-40, 855 P.2d 335 (1993) (equitable estoppel can arise when one has a duty to speak and a party is influenced by the silence of the other).

[15]We note that the court did not rely on the "fraud" section of Fed. R. Civ. P. 60 because of the time bar present in the federal rules; nonetheless we find the analysis persuasive.

[16]One noted authority has said:
"In general, relief is given under [Fed. R. Civ. P. 60(b)] clause (6) in cases in which the judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule. The court then considers whether relief under clause (6) will further justice without affecting substantial rights of the parties." 11 C.

■ Suburban argues that CR 60(b)(11) may not be used to circumvent the time limitation of CR 6 and CR 60(b)(1). We agree. However, Clarke would have been entitled to relief under subsection (b)(1) if sought within 1 year without regard to actions by Suburban's counsel. The distinguishing fact of this case is that defendant's failure to act was the result of Suburban's counsel's conduct and not merely Clarke's counsel's excusable neglect.[17] The presence of the issue as to Suburban's counsel's actions establishes that the relief under subsection (b)(11) would not contravene the policy of CR 6. 11 C. Wright & A. Miller, *Federal Practice* § 2864 (1973) review numerous cases giving relief under the federal rule analogous to our subsection (b)(11) showing that it is not to be given a cramped or narrow reading.[18]

---

Wright & A. Miller, *Federal Practice* § 2864, at 213 (1973); *see also Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963) (Fed. R. Civ. P. 60(b)(6) is "a 'grand reservoir of equitable power to do justice in a particular case.' ") (quoting 7 J. Moore, *Federal Practice* 308 (1950)).

[17]*See* 11 C. Wright & A. Miller, *Federal Practice* § 2864, at 216 (1973) (analyzing the Supreme Court's decision in *Klapprott v. United States*, 335 U.S. 601, 93 L. Ed. 266, 69 S. Ct. 384 (1949), the authors distinguish between situations of "excusable neglect", where Fed. R. Civ. P. 60(b)(1) solely applies, and extraordinary situations "which cannot fairly or logically be classified as mere 'neglect,' " where Fed. R. Civ. P. 60(b)(6) may be invoked to avoid the 1-year time limit); *see also Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990) (court implemented Fed. R. Civ. P. 60(b)(6) after considering the broad equities of the case which included fact that plaintiff's attorney inexcusably neglected the case leading to its dismissal); *Byron v. Bleakley Transp. Co.*, 43 F.R.D. 413 (S.D.N.Y. 1967) (court applied Fed. R. Civ. P. 60(b)(6) to vacate default judgment because plaintiff's attorney, though aware of shipowner's mailing address, sent service to Secretary of State 1 day before statute of limitations on the action); *Cavalliotis v. Salomon*, 357 F.2d 157 (2d Cir. 1966) (in part because plaintiff's attorney had not informed defendants of the dismissal of their claim, court applied Fed. R. Civ. P. 60(b)(6)); *Stuski v. United States Lines*, 31 F.R.D. 188 (E.D. PA. 1962) (court granted relief through Fed. R. Civ. P. 60(b)(6) where plaintiff's attorney did not attempt to remind defendant to file notice of appearance and answer in federal court).

[18]11 C. Wright & A. Miller, *Federal Practice* § 2864, at 220 (1973) ("Relief [under Fed. R. Civ. P. 60(b)(6)] often is denied on the ground that an insufficient showing has been made, but if the facts are compelling enough the courts are ready to find that 'something more' than one of the grounds stated in the first five clauses is present, and that relief is available under clause (6)."). (Footnotes omitted.)

██ Suburban argues that no court has employed subsection (b)(11) to vacate a default judgment. No Washington court has so held but relief has been given under the analogous federal rule from judgments on the merits after trial, which are entitled to much more respect than a judgment by default.[19]

The finality of judgments is an important value of the legal system. However, in both civil and criminal cases, circumstances arise where finality must give way to the even more important value that justice be done between the parties. CR 60 is the mechanism to guide the balancing between finality and fairness. It would be a perversion of the salutary purposes of the rule to uphold the finality of a default judgment to which Clarke has prima facie established valid defenses where counsel deliberately misled Clarke as to the status of the lawsuit.[20]

We affirm.

SCHOLFIELD and BAKER, JJ., concur.

Review denied at 124 Wn.2d 1006 (1994).

---

[19]*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988) (Supreme Court determined that extraordinary circumstances existed where lower court judge should have recused himself such that Fed. R. Civ. P. 60(b)(6) permitted vacation of the final judgment); *Hand v. United States*, 441 F.2d 529 (5th Cir. 1971) (appellate court affirmed the District Court's granting taxpayer a new trial premised on Fed. R. Civ. P. 60(b)(6) because evidence existed that jury inconsistently answered interrogatories, that the government possibly improperly used illegally seized evidence and that the IRS commissioner lacked evidence to support his assessment).

[20]*Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 354-55, 858 P.2d 1054 (1993) (The Supreme Court imposed sanctions for abuse of the discovery process where it appeared no conceivable discovery request would have prompted the defendants to provide the relevant letters. Of import in our situation is the Supreme Court's reaffirmation that "[V]igorous advocacy is not contingent on lawyers being free to pursue litigation tactics that they cannot justify as legitimate. . . . [The lawyer] is subject to the correlative obligation to comply with the rules and *to conduct himself in a manner consistent with the proper functioning of that system*." (Italics ours.)).