# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>DAVID M. JINKS,<br><br>                    Respondent,<br><br>and<br><br>PAULA SOMMERVILLE,<br><br>                    Appellant. | No. 60167-2-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Paula Sommerville appeals the superior court's order granting David Jinks' motion to vacate the dissolution order entered following their divorce. Sommerville argues that the superior court abused its discretion in granting Jinks' motion to vacate because its reasons for granting the order did not justify relief. We agree and reverse.

FACTS

Somerville and Jinks were married in 1996. Sommerville was a veterinarian, and Jinks had an MBA. Over the next 25 years, Sommerville and Jinks built a veterinary practice, Companion Veterinary Hospital.

In October 2021, Sommerville and Jinks separated. At the same time, they negotiated the sale of Companion Veterinary to Western Veterinary Partners (WVP). WVP agreed to pay $4 million for the practice, with an initial $2.4 million cash payment and the remainder paid over time through, among other things, two promissory notes and stocks in WVP. Sommerville and Jinks also entered an agreement between themselves, which identified how the sales proceeds would be

divided (Separation Agreement). The Separation Agreement generally provided, with some exceptions, that the proceeds of the sale would be split evenly between the parties.

In December 2021, Jinks petitioned for dissolution of the marriage. The next month, in January 2022, WVP made the initial $2.4 million cash payment. Jinks and Sommerville split those funds consistently with the terms of the Separation Agreement.

Three months later, the parties presented an agreed dissolution order that purported to distribute the parties' property to the superior court. Although the parties had entered the earlier Separation Agreement dividing the proceeds of the Companion Veterinary sale, the agreed dissolution order stated that there was "no enforceable separation contract." Clerk's Papers (CP) at 12. The agreed dissolution order was also short on detail. Jinks and Sommerville were each awarded one piece of real property, and each party was awarded the personal property that the party "now has or controls." CP at 13-14. The agreed dissolution order further said that no transfer of property was required. The superior court entered the agreed dissolution order as presented in March 2022.

In January 2023, another payment from WVP for the sale of the veterinary practice was due. WVP paid $171,667.00 into an account jointly owned by Jinks and Sommerville. Jinks and Sommerville each withdrew $75,000 from the account. The remainder was deposited into an account to benefit their children or used to pay expenses.

In January 2024, just before the next payment was due from WVP, Sommerville, through counsel, informed Jinks that she believed that all future payments from WVP were her separate property.

In April 2024, Jinks filed a motion to enforce the dissolution order, which argued that the earlier Separation Agreement dividing the proceeds of the veterinary practice sale should be enforced. Jinks explained that, at the time he and Sommerville filled out the agreed dissolution order, not only did they not understand what a "separation contract" was, they had not yet entered the Separation Agreement. CP at 44. Further, they "simply neglected" to update the agreed dissolution order before it was presented to the superior court. CP at 45. But Jinks argued that because it had always been the parties' intent to abide by the Separation Agreement, it should be enforced as part of the dissolution decree.

Sommerville responded that the Separation Agreement was not enforceable because it was superseded by the agreed dissolution order, which failed to reference or incorporate the Separation Agreement.

The superior court denied Jinks' motion. It concluded that the Separation Agreement had not, by the express terms of the agreed dissolution order, been incorporated. And because the Separation Agreement was not incorporated into the agreed dissolution order, the superior court ruled that it was not enforceable.[1]

In July 2024, Jinks brought a motion under CR 60(b) to vacate the final dissolution order. Specifically, Jinks argued that the agreed dissolution order should be vacated under CR 60(b)(4)—fraud, CR 60(b)(6)—no longer equitable, and CR 60(b)(11)—any other reason justifying relief. Although it had been over two years since the agreed dissolution order was entered, Jinks argued

---

[1] Jinks appealed the order denying his motion to enforce the agreement. However, that appeal was dismissed on Jinks' motion. Ruling, *Jinks v. Sommerville*, No. 59744-6-II (Nov. 19, 2024).

that he was bringing the motion in a reasonable time because Sommerville had complied with the terms of the earlier Separation Agreement until January 2024.

Jinks requested relief under CR 60(b)(4) with an allegation that Sommerville, while they were drafting the agreed dissolution order, had been aware that failure to incorporate the Separation Agreement into the dissolution order would render it unenforceable. Thus, Jinks argued that Sommerville had breached her fiduciary duty as a spouse and committed misconduct resulting in entry of the agreed dissolution order.

Jinks argued that relief was appropriate under CR 60(b)(6) because Sommerville's subsequent decision to refuse to comply with the terms of the agreement made it inequitable to continue to enforce the agreed dissolution order.

Finally, Jinks argued that relief was warranted under CR 60(b)(11) if the superior court denied relief under CR 60(b)(4) and CR 60(b)(6). Jinks' argument overlapped with his CR 60(b)(4) argument; he contended that there were extraordinary circumstances justifying relief under CR 60(b)(11) because "Sommerville was under a high fiduciary duty not to take advantage of Jinks' obvious misplaced reliance on the terms of the [Separation] Agreement," and that "Sommerville's silence until January 4, 2024 constituted a false representation." CP at 295.

Sommerville responded with a declaration in which she clarified that she did not receive any legal advice during the divorce. She claimed that all of the dissolution documents were prepared by Jinks. Sommerville also explained that "[a]t the time of the divorce and forced sale of [her] business [she] was working overtime and under immense levels of stress and post Covid professional burnout." CP at 377. Sommerville stated that she did not remember signing the Separation Agreement regarding the sale of the veterinary practice and did not recall anything

4

about it. Sommerville denied engaging in any misconduct and explained that the parties were still married at the time of the initial cash payment from WVP and that she participated in an equal distribution of the funds in 2023 because she believed that they were both entitled to funds deposited into a joint account. Sommerville stated she was unaware of any legal issues until she decided to review the dissolution orders and sale contracts with an attorney in October 2023.

In his reply declaration, Jinks challenged Sommerville's characterization of her involvement, contending that Sommerville had actively participated in both the Separation Agreement and the divorce proceedings. Jinks explained that he and Sommerville filled out the dissolution orders together and "checked no on the separation agreement section because the Separation Agreement had not yet been signed. . . ." CP at 405. Then, "[a]midst the chaos" of the sale and the divorce, they "neglected to update the divorce decree." CP at 405.

On October 7, 2024, the superior court granted Jinks' motion to vacate the dissolution order. But the superior court did not agree with all of Jinks' arguments. Relevant to Sommerville's conduct regarding the dissolution and performance of the Separation Agreement, the superior court found no indication of fraud or violation of a fiduciary duty. The order stated,

> 8. No evidence indicates that [Sommerville] did anything whatever untoward in obtaining the decree but, rather that it was [Jinks'] error as the person interacting with the Court and as the drafter of the October 21, 2021 agreement.
>
> . . . .
>
> 10. [Sommerville] partially performed the October 21, 2021 agreement when she met [Jinks] at the bank to divide the first payment from WVP on January 5, 2023 and, therefore, both parties intended to honor the October 21, 2021 agreement when their divorce was made final on March 20, 2022 and for close to a year afterward.

CP at 421. Based on these findings, the superior court concluded that the dissolution decree was not unfairly obtained and, thus, denied Jinks' motion to vacate under CR 60(b)(4). The superior court also denied Jinks' motion to vacate under CR 60(b)(6) because it would be inequitable to allow Jinks to vacate only certain portions of the dissolution order and Jinks had not demonstrated a substantial potential of prevailing on the merits.

However, the superior court concluded that relief under CR 60(b)(11) was warranted because the superior court did not have full information regarding the parties' assets at the time of the dissolution when the parties presented the agreed order:

> 12. The parties had a duty to inform the Court and not just each other of their assets. *In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 505 P.3d 1218 (2022).
>
> 13. The divorce Court cannot decree a fair (just and equitable) allocation of assets and debts without the Court gaining thorough knowledge of the properties and liabilities. *In re Marriage of Grant*, 124 Wn.2d 1030, 883 P.2d 326 (1994).
>
> 14. The Court had a statutory duty under RCW 26.09.080 to divide property justly and equitably after considering, among other factors, the nature and extent of the parties' property and liabilities.
>
> 15. The Court did not do its statutory duty under RCW 26.09.080 to make an equitable division of assets and liabilities, nor did the Court appropriately set child support because it did not have the requisite information to do so.
>
> 16. For all of those reasons, [Jinks'] motion under CR 60(b)(11) should be granted.

CP at 424. Despite granting relief under CR 60(b)(11), the superior court apparently rejected Jinks' argument that Sommerville's breach of her fiduciary duty and partial compliance were extraordinary circumstances.

The superior court vacated both the dissolution order and the accompanying child support orders.

Sommerville appeals.[2]

ANALYSIS

Sommerville argues that the superior court abused its discretion because the superior court's stated reasons for granting Jinks' motion to vacate were not valid grounds under CR 60(b)(11). Jinks responds that, even if the superior court's reasons for granting the motion were incorrect, the record demonstrates there were grounds to vacate the order that would be valid under CR60(b)(11) and, therefore, we should affirm.

We review a superior court's ruling on a motion to vacate for an abuse of discretion. *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015). The superior court abuses its discretion if it "exercised its discretion on untenable grounds or for untenable reasons." *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). The superior court's decision "is based on untenable reasons if it is based on an incorrect [legal] standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

"Finality of judgments is a central value in the legal system, but circumstances can arise where finality must give way to the greater value that justice be done." *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). Thus, CR 60(b) allows the superior court, "[o]n motion and upon such terms as are just," to relieve a party from a final judgment for specified reasons.

---

[2] Jinks does not cross appeal the superior court's order denying his motion under CR 60(b)(4) or CR 60(b)(6).

Under CR 60(b)(11), the superior court may grant relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11) is a "catch-all provision intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." *Shandola*, 198 Wn. App. at 895. "The provision applies to extraordinary circumstances involving irregularities extraneous to the proceeding." *Id.* Motions for relief under CR 60(b)(11), must be brought within "a reasonable time." CR 60(b).[3]

Sommerville argues primarily that the superior court abused its discretion because the superior court's lack of information about the parties' assets when entering the agreed dissolution orders is not an extraordinary circumstance that warrants relief from judgment under CR60(b)(11). *See Shandola*, 198 Wn. App. at 895. We agree.

The parties' dissolution orders were entered by agreement. The superior court does not abuse its discretion when it enters an agreed property settlement without independently evaluating the statutory factors for property distribution under RCW 26.09.080. *In re Marriage of Curtis*, 106 Wn. App. 191, 197-98, 23 P.3d 13, *review denied*, 145 Wn.2d 1008 (2001). Therefore, the superior court erred when it concluded that it had an independent obligation to review all of the parties' assets before entering the agreed dissolution orders. Moreover, the failure of the parties to provide the superior court with complete information about their assets is not an irregularity *extraneous* to the proceeding. *See Shandola*, 198 Wn. App. at 895, 899 (noting CR 60(b)(11)

---

[3] For several of the bases for relief under CR 60, including CR 60(b)(1) for "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment," the motion must be brought within one year of the order. CR 60(b).

applies to "irregularities extraneous to the proceeding" including postjudgment appellate court decisions in other cases).

Because the superior court misapplied CR 60(b)(11), it abused its discretion when it granted Jinks' motion to vacate under this rule on the basis that it lacked information about the parties' assets before entering the agreed dissolution order.

Although the superior court's stated reason for granting Jinks' motion to vacate under CR 60(b)(11) was improper, Jinks maintains that the record demonstrates that appropriate grounds still exist for granting the motion under CR 60(b)(11) and that, therefore, we should affirm anyway. Jinks is correct that we can generally affirm the superior court on any grounds supported by the record. *See Larson v. State*, 9 Wn. App. 2d 730, 744, 447 P.3d 168 (2019) ("We can affirm a trial court on any basis supported by the record."), *review denied*, 194 Wn.2d 1019 (2020). But for the reasons explained below, the record before us does not support affirming the superior court's order.

Jinks relies on *Suburban Janitorial Services v. Clarke America* [4] to argue that Sommerville's partial compliance with the Separation Agreement (when she acquiesced to the division of the first two payments from WVP consistent with the terms of the Separation Agreement) justifies relief under CR 60(b)(11). In *Suburban*, the plaintiff served a summons and complaint on the defendant; when the defendant did not respond, the plaintiff filed the complaint with the superior court and obtained a default judgment. 72 Wn. App. at 304. Prior to the answer deadline, defendant's counsel had prepared a notice of appearance and answer, but counsel did not send them to the plaintiff until after the plaintiff had already obtained the default judgment. *Id.*

---

[4] 72 Wn. App. 302, 863 P.2d 1377 (1993), *review denied*, 124 Wn.2d 1006 (1994).

When defendant's counsel sent the responsive materials to the plaintiff, counsel (who, at this point, did not know about the default) requested that the plaintiff inform him of their intentions regarding the litigation. *Id.* After receiving no response, defendant's counsel sent another letter asking whether the plaintiff had dropped the claim. *Id.* Again, counsel received no response. *Id.* When the defendant later learned of the default judgment, they moved to vacate the default judgment. *Id.*

The court held that the defendant was entitled to relief under both CR 60(b)(4) and CR 60(b)(11). *Id.* at 311-13. The court first concluded that plaintiff's silence was a misrepresentation and justified relief under CR 60(b)(4). *Id.* at 311. The court then went on to determine that relief would also be warranted under CR 60(b)(11):

> Even if we were to hold that counsel's letter did not generate a duty to speak, and that the failure to respond was not a misrepresentation, we would still hold that these facts constitute a persuasive "other reason justifying relief from the operation of the judgment." CR 60(b)(11).
>
> [Plaintiff] argues that CR 60(b)(11) may not be used to circumvent the time limitation of CR 6 and CR 60(b)(1). We agree. However, [defendant] would have been entitled to relief under subsection (b)(1) if sought within 1 year without regard to actions by [plaintiff's] counsel. *The distinguishing fact of this case is that defendant's failure to act was the result of [plaintiff's] counsel's conduct and not merely [defendant's] counsel's excusable neglect*. The presence of the issue as to [plaintiff's] counsel's actions establishes that the relief under subsection (b)(11) would not contravene the policy of CR 6.

*Suburban*, 72 Wn. App. at 311-12 (emphasis added) (footnotes omitted).

Here, Jinks asserts that Sommerville's partial compliance with the Separation Agreement similarly justifies relief under CR 60(b)(11). But *Suburban* is distinguishable from this case. Our record establishes that *neither* party was aware of the mistake in the agreed dissolution order that rendered the Separation Agreement unenforceable until *after* the one-year time limit to vacate the

10

judgment for a mistake under CR 60(b)(1) had expired. *See* CR 60(b). Thus, Sommerville's partial compliance with the Separation Agreement (both with the initial WVP cash payment and the second payment in 2023) was not the reason why Jinks failed to act within the allowed time to remedy the mistake—Jinks simply did not act due to ignorance of the mistake (an ignorance shared by both parties).

We recognize that Jinks' argument would be more compelling if, as he has asserted, Sommerville actually knew about the mistake prior to the expiration of the one-year time limit in CR 60(b)(1) for "mistakes." However, the record does not support this assertion. The superior court specifically found that Sommerville did not engage in any fraud or misconduct in obtaining the dissolution order—rejecting Jinks' claim that Sommerville allowed the mistake in the agreed dissolution order to be entered knowing that it would render the Separation Agreement unenforceable. And although the superior court found that Sommerville partially complied with the Separation Agreement, its finding indicates that this was because both parties were acting consistently with their initial intent and understanding that the Separation Agreement was enforceable. In addition, there is no evidence in the record that contradicts Sommerville's claim that she did not know about the mistake in the agreed dissolution order or that the Separation Agreement was unenforceable until she consulted with an attorney in October 2023. All of Jinks' assertions to the contrary are merely speculation. Thus, we cannot agree that the record supports affirming the superior court's order on Jinks' alternative argument for relief under CR 60(b)(11).

CONCLUSION

The superior court abused its discretion in concluding that the superior court's lack of information when entering the dissolution decree justified relief under CR 60(b)(11). Thus, we reverse the superior court's order granting Jinks' motion to vacate the dissolution order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, A.C.J.

We concur:

LEE, J.

CRUSER, J.